1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

TWITCH INTERACTIVE, INC.,

Plaintiff,

v.

JUSTIN JOHNSTON, et al.,

Defendants.

Case No. 16-cv-03404-BLF

**ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS ERIC BOUCHOUEV AND JARED KELLY AKA ALEX RENFROW**

[Re: ECF 68]

Plaintiff Twitch Interactive, Inc. ("Twitch") brings this action against Erik Bouchouev, Justin Johnston, Michael and Katherine Anjomi, Pooria Sharaffodin, Marco Pelagatti, and Alex Renfrow, whose true name is Jared Kelly, for allegedly providing bot services that artificially inflate broadcaster popularity statistics in Twitch's video streaming services, thereby harming Twitch and its user community. Complaint ¶¶ 1–6, ECF 1. On March 1, 2017, the Court entered a stipulated judgment in favor of Twitch and against Defendant Johnston. ECF 38. On March 8, 2017, the Clerk of Court entered default as to Bouchouev, the Anjomis, and Renfrow/Kelly. ECF 41. Twitch dismissed this action against Sharaffodin and Pelagatti without prejudice on May 19, 2017. ECF 46. On January 18, 2018, the Court entered an order of default judgment against the Anjomis, ordering them to pay actual damages and statutory damages. ECF 55. The same day, the Court issued a judgment and permanent injunction against the Anjomis. ECF 56; ECF 57.

Before the Court is Twitch's Motion for Default Judgment against Eric Bouchouev and Jared Kelly AKA Alex Renfrow (together, "Defendants"), whereby Twitch seeks default judgment on the following claims: (1) trademark infringement in violation of 15 U.S.C. § 1114; (2) unfair competition in violation of 15 U.S.C. § 1125(a); (3) violation of the Anti-Cybersquatting

Consumer Protection Act[1] ("ACPA"), 15 U.S.C. § 1125(d); and (4) breach of contract.[2]  Motion

for Default Judgment ("Motion") at 13–18, ECF 68.  Twitch also requests an award of

Bouchouev's profits, statutory damages from Renfrow/Kelly and Bouchouev, attorney's fees and

costs, and injunctive relief.  *See* Motion at 19–25.  Defendants have neither appeared nor filed an

opposition.  The Court previously found this matter suitable for submission without oral argument.

ECF 73.  Having carefully considered Twitch's submissions, the Court hereby GRANTS Twitch's

Motion for Default Judgment.

## I.     BACKGROUND

### A.     Twitch's Business and Trademarks

Founded in 2011, Twitch provides an online service through which users can broadcast

themselves playing video games and other content.  Complaint ¶ 21.  The broadcasters interact

with their audiences by participating in activities such as chatting and running promotions.  *Id.*

¶ 22.  Each broadcaster has a distinct "broadcaster channel" which consists of a chat window and a

Twitch video player through which other Twitch users can view the broadcaster's video.  *Id.* ¶ 24.

Viewers who have registered a Twitch account can participate in "chat" and "follow"

broadcasters.  *Id.* ¶¶ 25–26.

Twitch measures certain statistics about a broadcaster's stream, including the (1) current

number of viewers watching the stream; (2) total number of viewers who have watched the

stream; and (3) total number of followers.  Complaint ¶ 27.  The statistics are used to calculate the

popularity of the content provided by the broadcaster.  *Id.* ¶ 28.  For example, higher viewership

numbers may lead to a higher position in the directory of channels and provide monetization

opportunities to the broadcaster.  *Id.* ¶ 29.

United States District Court
Northern District of California

---

[1] Against Defendant Bouchouev only.

[2] Twitch's Complaint also asserts claims under the Computer Fraud and Abuse Act, the California Comprehensive Computer Data Access and Fraud Act, California's unfair competition law, tortious interference with contract, fraud, and accounting.  Complaint ¶¶ 146–54, 165–98.  Twitch states that it will not move for entry of judgment on those claims, and thus, they should be dismissed.  Motion at 13 n.2.  Accordingly, the Court DISMISSES without prejudice Twitch's claims under the Computer Fraud and Abuse Act, the California Comprehensive Computer Data Access and Fraud Act, California's unfair competition law, tortious interference with contract, fraud, and accounting.

Broadcasters can earn money directly through Twitch's Partnership Program. Through that program, Twitch shares revenues with "Partners." Complaint ¶¶ 2, 30. While any broadcaster may apply to become a Partner, Twitch accepts only broadcasters who meet certain qualifications. *Id.* ¶ 30. The qualifications include a consistently high number of viewers and followers. *Id.*

Twitch owns rights in the TWITCH trademark (U.S. Registration No. 4,275,948) and TWITCHTV trademark (U.S. Registrations Nos. 4,087,877 and 4,230,874) and has applied for registration of its "Glitch Logo" (U.S. App. Serial No. 86,485,295). Complaint ¶ 32; Ex. H to Complaint. The TWITCH mark "consists of standard characters without claim to any particular font, style, size, or color." Ex. H to Complaint; Ex. A to Decl. in Supp. of Mot. ("Hall Decl."), ECF 69-1. Twitch owns common law rights in the TWITCH trademark and the Glitch Logo. Complaint ¶ 32. When providing its services, Twitch uses a purple and white color scheme with a distinct font and logo. *Id.* ¶ 33. Presented below is an example of Twitch's font and logo and the Glitch Logo (the stylized comment bubble above "twitch"). *Id.*



### B.  Bouchouev and Renfrow/Kelly's Use of Twitch's Trademarks

Bouchouev operates websites located at twitch-viewerbot.com, twitch-buddy.com, twitchviewerbot.net, streambot.com, and blackdesertbot.com. Complaint ¶ 52. According to Twitch, Bouchouev entices broadcasters to use bot services to artificially inflate the usage associated with the broadcasters' channels. *See id.* ¶ 54. For example, on www.twitch-viewerbot.com, Bouchouev offers, among other things, "Viewer Bot," "Chat Bot," "Follower Bot," and "Twitch Partnership" services. *Id.* ¶ 53. On various websites, Bouchouev offers numerous bot services packages that he claims will help the customers gain more viewers. *See id.* ¶¶ 56–57, 59–60, 62–64. Bouchouev advertises his bot services on TwitchViewerbot.Net, StreamBot, and Twitch Viewer Bot Facebook accounts, as well as his Twitch Viewer Bot Twitter,

Twitch Viewer Google Plus, and Streambot YouTube accounts.  Complaint ¶ 67; Ex. B-III to Complaint.

Alex Renfrow/Jared Kelly operates websites located at www.streamhomies.com and www.famehomies.com, which links to www.streamhomies.com.  Complaint ¶ 114; Ex. G to Complaint.  Similar to Bouchouev, Renfrow/Kelly entices broadcasters to use bot services to artificially inflate the usage associated with the broadcasters' channels.  Complaint ¶ 115.  On various websites, Renfrow/Kelly offers numerous bot services packages that he claims will help the customers gain more viewers.  *See id.* ¶¶ 116–17.  Twitch also claims that "Renfrow[/Kelly] uses the TWITCH mark in commerce without Twitch's permission," and that this usage will likely deceive consumers.  *Id.* ¶ 120.

To register an account or use Twitch's services, a user must agree to Twitch's Terms of Service, Rules of Conduct, API Terms of Service, and Trademark and Brand Asset Guidelines (collectively, the "Terms").  Complaint ¶ 34.  The Terms prohibit various activities, including the use of any "robot . . . or other automated means to access the Twitch Service for any purpose"; "impersonat[ing] any person or entity . . .  misrepresent[ing] the source, identity, or content of information transmitted via the Twitch Service"; "manipulat[ing] identifiers in order to disguise the origin of any Content transmitted through the Twitch Service"; "mak[ing] unsolicited offers, advertisements"; and "us[ing] the Twitch Service in any manner that would . . . negatively affect or inhibit other users from fully enjoying the Twitch Service or that could damage[] the functioning of the Twitch Service in any manner."  *Id.* ¶ 37 (alterations in original); *see also* Ex. A to Complaint at 8–9.[3]  The Terms also prohibit the use of Twitch's trademarks without prior written permission of Twitch.  Complaint ¶ 40.

According to Twitch, Defendants "agreed to abide by the Terms by registering an account with Twitch, using the Twitch services, and/or by accessing the Twitch services to, among other things, develop, test, or use their bots."  Complaint ¶ 42.  Twitch contends that Defendants violate the Terms by offering and advertising their bot services.  *Id.* ¶¶ 45–48, 155–64.

---

[3] The cited page number for Ex. A to the Complaint refers to the page number of the document at ECF 1-1.  Thus, the title page "Exhibit A" is page one.

4

## II.    JURISDICTION

Before turning to the merits, the Court must first address its jurisdiction to enter default judgment against Defendants.  Subject matter jurisdiction is indisputably available under 28 U.S.C. §§ 1331, 1338, and 1367, as some of Twitch's claims arise under federal law.  The Court must also have personal jurisdiction over a defendant, or else the entry of default judgment is void. *Veeck v. Commodity Enterprises, Inc.*, 487 F.2d 423, 426 (9th Cir. 1973).  Here, as discussed below, the Court is satisfied that (1) Defendants have been served and that (2) this Court has personal jurisdiction over Defendants because they consented to Twitch's Terms which contain a California forum selection clause.

### A.    Amending the Caption to Include Kelly as a Defendant

Twitch requests that the Court amend the caption of the complaint to include Jared Kelly as a Defendant on the basis that Jared Kelly is the true name of Alex Renfrow.  *See* Motion at 12. Twitch argues that Jared Kelly is the true name of the person who operated the bot websites at www.streamhomies.com and www.famehomies.com.  *Id.*  Twitch presents evidence that "Alex Renfrow" is a pseudonym for the defendant providing the bot services available at www.streamhomies.com and www.famehomies.com and that the individual operating these websites is actually named Jared Kelly.  *See* Decl. in Supp. of Mot. ("Simpkins Decl.") ¶ 4, ECF 70; Ex. C to Simpkins Decl., ECF 70-1.

Rule 15 encourages courts to "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2).  The Court considers whether an amendment would prejudice Mr. Kelly. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (explaining that prejudice is the critical factor when examining whether amendment is appropriate).  Here, Kelly has received notice of this lawsuit and all of the pleadings filed herein given that Twitch successfully emailed him at the email address sexygurl1505@gmail.com.  Further, there is no doubt that Mr. Kelly is aware of his own pseudonym.  *See* Order at 3; Proof of Service at 1, ECF 34.  The Court finds that it would be in the interest of justice to include Kelly because it will ensure that the correct person is named and properly held accountable.  Accordingly, the Court GRANTS Plaintiff's request to amend the caption of the complaint to include Jared Kelly as a

Defendant.  All allegations in the complaint against "Alex Renfrow" shall be deemed to be allegations against Jared Kelly.

### B.  Service of Process

"A federal court is without personal jurisdiction over a defendant unless the defendant has been served in accordance with Federal Rule of Civil Procedure 4." *Travelers Cas. & Sur. Co. of Am. v. Brenneke*, 551 F.3d 1132, 1135 (9th Cir. 2009).  However, "Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint." *United Food & Comm. Workers Union v. Alpha Beta Co.*, 736 F.2d 1371, 1382 (9th Cir. 1984). What is required is "substantial compliance" with Rule 4, with "neither actual notice nor simply naming the defendant in the complaint" being sufficient.  *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988) (quoting *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986), *cert. denied*, 484 U.S. 870 (1987)).

The Court is satisfied that Twitch has "substantially complied" with Rule 4.  Twitch initially attempted to personally serve Defendants.  *See* Motion to Serve Via Alternative Means at 4–6, ECF 29.  Twitch engaged private investigators to locate Defendants but to no avail.  *Id.* at 6, 8.  Twitch subsequently sent the complaint and summons to Defendants via FTP and confirmed that none of the emails were returned as undeliverable.  *Id.* at 3.  The Court was satisfied by Twitch's showing.  In its Order Granting Twitch's Motion to Serve Via Alternative Means ("Order," ECF 33), the Court found that service by e-mail would be "reasonably calculated to give actual notice" to Defendants because Twitch's multiple emails were successfully delivered to Defendants' email addresses.  *See* Order at 2–4.  On January 24, 2017, Twitch filed a Proof of Service, ECF 34, demonstrating compliance with the Court's Order along with service of the complaint and associated documents to Defendants.

Additionally, the Court finds that Kelly has been effectively served with notice of the amended complaint, which adds him as a defendant here.  Kelly received email notice of Twitch's motion requesting to amend the complaint to add him at three of his email accounts.  *See* Motion at 33.  Service on Kelly of the motion and the request to add him substantially complied with Rule 4 and this Court's prior order allowing service on Defendants by email.  Insofar as service can

6

only be accomplished by email to Kelly, the Court finds that Kelly has received notice of the amendment to the complaint and, thus, further service of the amendment to the complaint is waived. *See* Order at 2–4. Kelly did not oppose the motion. Therefore, under these circumstances, the Court concludes that Defendants have been appropriately served and afforded fair notice of this action.

## C.    Personal Jurisdiction

The Complaint includes allegations directed to the jurisdiction issue. *See* Complaint ¶¶ 10–11, 16. Particularly, the Complaint pleads that "by using Twitch's services and website, Defendants have agreed to jurisdiction within Santa Clara County. Twitch's Terms of Service provide 'that the state or federal courts in Santa Clara County, California have exclusive jurisdiction . . . over any suit between the parties not subject to arbitration.'" *Id.* ¶ 11. Indeed, Twitch's Terms of Service include such a forum selection clause. Ex. A to Complaint at 14. Hence, users of Twitch's services are subject to a forum selection clause that chooses California.

"[P]arties to a contract may agree in advance to submit to the jurisdiction of a given court." *National Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 316 (1964). "[T]he court need not embark on a 'minimum contacts' analysis where the defendants have consented to California jurisdiction." *Craigslist, Inc. v. Kerbel*, No. 11-CV-3309-EMC, 2012 WL 3166798, at *6 (N.D. Cal. Aug. 2, 2012) (citing *Zenger–Miller, Inc. v. Training Team, GmbH,* 757 F. Supp. 1062, 1069 (N.D. Cal. 1991)). Forum selection clauses in contracts are presumptively valid. *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10 (1972). The Ninth Circuit has recognized that accepting a forum selection clause demonstrates consent to personal jurisdiction in that forum. *See SEC v. Ross*, 504 F.3d 1130, 1149 (9th Cir. 2007). As such, courts have found personal jurisdiction based on consent to forum selection clauses contained in internet websites' terms of use. *See, e.g.*, *Kerbel*, 2012 WL 3166798, at *6. Accordingly, the Court may enforce the forum selection clause unless it is unreasonable. *See id.* (citing *Zenger–Miller*, 757 F. Supp. at 1069).

Here, the forum selection clause in Twitch's Terms of Service provides that "courts in Santa Clara County, California have exclusive jurisdiction." Complaint ¶ 11; Ex. A to Complaint at 14. To have their bots participate in the chat and follow broadcasters, Defendants agreed to

1  Twitch's Terms of Service.  *See* Complaint ¶¶ 25–26, 34, 42.  There is no indication that Twitch's

2  Terms of Service is either unfair or unreasonable.  Defendants have not appeared to raise any

3  challenge to the Terms of Service's forum selection clause.  The Court, therefore, concludes that

4  the forum selection clause is enforceable and that the Court may properly exercise personal

5  jurisdiction over Defendants based on their consent to Twitch's Terms of Service.  Because

6  Defendants consented to personal jurisdiction, the Court need not consider the analysis for general

7  and specific jurisdiction.

8  **III.    ANALYSIS OF TWITCH'S MOTION FOR DEFAULT JUDGMENT**

9        Pursuant to Federal Rule of Civil Procedure 55(b), the Court may enter default judgment

10  against a defendant who has failed to plead or otherwise defend an action.  "The district court's

11  decision whether to enter a default judgment is a discretionary one."  *Aldabe v. Aldabe*, 616 F.2d

12  1089, 1092 (9th Cir. 1980).

13        In exercising its discretion to enter default judgment, a district court considers seven

14  factors set forth by the Ninth Circuit in *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986)

15  ("*Eitel* factors"): (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's

16  substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action;

17  (5) the possibility of dispute concerning material facts; (6) whether default was due to excusable

18  neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring

19  decisions on the merits.  In considering these factors after a clerk's entry of default, the court takes

20  all well-pleaded factual allegations in the complaint as true, except those with regard to damages.

21  *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987).  "The Court may, in its

22  discretion, consider competent evidence and other papers submitted with a motion for default

23  judgment to determine damages."  *Bittorrent, Inc. v. Bittorrent Mktg. GMBH*, No. 12-CV-2525-

24  BLF, 2014 WL 5773197, at *8 (N.D. Cal. Nov. 5, 2014) (citing *Televideo*, 826 F.2d at 917–18).

25  Only the merits and sufficiency of Twitch's claims (second and third factors) and the amount of

26  money at stake (fourth factor) warrant in-depth analysis.

27        **A.    Merits of Twitch's Claims and Sufficiency of the Complaint**

28             **i.    Trademark Infringement (15 U.S.C. § 1114)**

To prove infringement of a registered trademark, a plaintiff must demonstrate that it "owns a valid mark, and thus a protectable interest" and that the defendant's "use of the mark 'is likely to cause confusion, or to cause mistake, or to deceive.'" *Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1196 (9th Cir. 2009) (quoting *KP Permanent Make–Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 602 (9th Cir. 2005)); *see* 15 U.S.C. § 1114(1)(a), (b).  Here, Twitch has properly alleged and demonstrated that it owns a valid mark and protectable interest in the TWITCH mark and the "Glitch" logo by supplying evidence that the marks are federally registered by the United States Patent and Trademark Office.  Complaint ¶ 32; Ex. H to Complaint; 15 U.S.C. § 1115(a) (stating that registration on principal register is *prima facie* evidence of validity, ownership, and exclusive right to use registered mark).

Taking the allegations in the Complaint as true, Twitch has also sufficiently demonstrated that Defendants' use of Twitch's marks is likely to cause confusion under the factors identified in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 349 (9th Cir. 1979) (identifying eight factors including (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines).  The *Sleekcraft* test is "a fluid one and the plaintiff need not satisfy every factor, provided that strong showings are made with respect to some of them." *Survivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 631 (9th Cir. 2005).  Applying these factors flexibly and as discussed below, the Court finds that the allegations establish that Defendants used TWITCH to offer and advertise their bot services.  Complaint ¶¶ 52, 56, 67, 114, 116, 119; Exs. B, B-III, G, G-II to Complaint.

Here, Renfrow/Kelly used the TWITCH trademark on www.streamhomies.com, www.famehomies.com, and a Facebook page to promote the Stream Homies' viewer bot packages. *See* Exs. A, B to Simpkins Decl., ECF 70-1; Exs. G, G-II to Complaint.  Meanwhile, Bouchouev used the TWITCH mark on www.twitchviewerbot.net, www.twitch-buddy.com, www.twitch-viewerbot.com, and www.blackdesertbot.com. *See* Ex. E to Simpkins Decl. at 23,

9

31, 34, 39, ECF 70-1.[4]  Twitch submitted a screenshot of one of the infringing domain names, "www.twitchviewerbot.net," which displays the name "Twitch" in Twitch's distinct purple and white color scheme while purporting to offer specific numbers of "viewers," "followers", and "chatters" on Twitch.  Ex. E to Simpkins Decl. at 23–24.  TWITCH and "Twitch" as used on the domain are similar and are both used in relation to Twitch's streaming services.  Bouchouev also used TWITCH in advertising his bot packages on Twitter and YouTube.  Complaint ¶ 67; Ex. B-III to Complaint.  Hence, both Defendants used identical or similar marks to Twitch's trademarks.  Moreover, Twitch and Defendants both use the same marketing channel—the internet.  Defendants also clearly intended to choose Twitch because the name is similar to TWITCH.  For these reasons, Twitch has sufficiently demonstrated that Defendants' prominent use of the word TWITCH when offering bot packages in connection to Twitch's services is likely to cause confusion among users regarding the source of Defendants' services.

Although there is no evidence of actual user confusion, Twitch's showing on the other *Sleekcraft* factors discussed above is sufficiently strong to find that Defendants' use of Twitch's marks is likely to cause consumer confusion in violation of 15 U.S.C. § 1114.  The merits and sufficiency of the allegations thus favor entering default judgment on Twitch's claim for trademark infringement in violation of 15 U.S.C. § 1114.

### ii.    Unfair Competition (15 U.S.C. § 1125(a))

Section 43 of the Lanham Act, 15 U.S.C. § 1125(a), provides a cause of action for anyone injured by unfair competition.  "The 'ultimate test' for unfair competition is exactly the same as for trademark infringement: 'whether the public is likely to be deceived or confused by the similarity of the marks.'"  *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir. 1988) (quoting *New West Corp. v. NYM Co. of California*, 595 F.2d 1194, 1201 (9th Cir.1979)).  Thus, as discussed above, Twitch has established Renfrow/Kelly and Bouchouev's liability for infringing TWITCH in violation of 15 U.S.C. § 1125(a).

Section 1125(a) "also provides a cause of action for common law trademark

---

[4] Because Exhibit E does have not have page numbers, the Court uses the page numbers of the ECF to refer to specific pages.

infringement—*i.e.*, infringement of marks that are unregistered." *Micro/sys, Inc. v. DRS Techs., Inc.*, No. 14-CV-3441-DMG, 2015 WL 12748630, at *3 (C.D. Cal. Feb. 13, 2015) (citing *Two Pesos, Inc., v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992)). Here, Twitch owns common law rights in the Glitch Logo. Complaint ¶ 32. Renfrow/Kelly used the Glitch logo on the Stream Homies Facebook page to advertise and sell bot services. *See* Ex. B to Simpkins Decl. at 13.[5] In addition, Bouchouev used the Glitch logo on www.twitch-buddy.com to advertise "Twitch. Viewers Chatters Followers Get Popular Today!" Ex. E to Simpkins Decl. at 31, 33.

Based on a similar *Sleekcraft* factor analysis discussed above for the TWITCH mark, Twitch has sufficiently demonstrated that the Defendants' use of the imitation Glitch Logo is likely to cause confusion with Twitch's Glitch Logo in violation of 15 U.S.C. § 1125(a). For the foregoing reasons, the merits and sufficiency of the allegations likewise favor entering default judgment on Twitch's claim for unfair competition in violation of 15 U.S.C. § 1125(a).

### iii. Cybersquatting (15 U.S.C. § 1125(d)) (against Defendant Bouchouev only)

Congress enacted the ACPA in 1999 as an amendment to the Lanham Act. "The statute is designed to reach activity that might otherwise fall outside the scope of the Lanham Act, i.e., the bad faith registration of domain names with intent to profit from the goodwill associated with the trademarks of another." *Cazorla v. Hughes*, No. 14-CV-2112-MMM, 2014 WL 12235425, at *7 (C.D. Cal. Apr. 7, 2014). A violation of the ACPA occurs when a domain name registrant (1) registers, uses, or traffics in a domain name that (2) is identical or confusingly similar to a distinctive or famous trademark, with (3) bad faith intent to profit from the trademark. *See* 15 U.S.C. § 1125(d)(1)(A).

Although it is not required for general trademark liability, "[a] finding of 'bad faith' is an essential prerequisite to finding an ACPA violation." *Interstellar Starship Servs., Ltd. v. Epix, Inc.*, 304 F.3d 936, 946 (9th Cir. 2002) (quoting 15 U.S.C. § 1125(d)(1)(A)). The ACPA enumerates nine nonexclusive factors for courts to consider in determining whether bad faith

---

[5] Because Exhibit B does have not have page numbers, the Court uses the page numbers of the ECF to refer to specific pages.

exists. *See* 15 U.S.C. § 1125(d)(1)(B)(i).[6]  The use of the listed criteria is permissive, *Virtual*

*Works, Inc. v. Volkswagen of Am., Inc.*, 238 F.3d 264, 269 (4th Cir. 2001), and "the most

important grounds for finding bad faith are the unique circumstances of the case," *Interstellar*

*Starship*, 304 F.3d at 946 (quotation omitted); *see also Lahoti*, 586 F.3d at 1202.

The Court finds that Bouchouev is liable for cybersquatting because the three elements in

15 U.S.C. § 1125(d)(1)(A) are met.  As the Complaint alleges, Bouchouev registered and used the

following domain names that are confusingly similar to the TWITCH mark: www.twitch-

viewerbot.com, www.twitch-buddy.com, and www.twitchviewerbot.net.  Complaint ¶ 52; Ex. B to

---

[6] These criteria are:

> (I) the trademark or other intellectual property rights of the person, if any, in the domain name;
> (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;
> (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;
> (IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;
> (V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;
> (VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;
> (VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;
> (VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and
> (IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c) of this section.

Complaint. The TWITCH mark is distinctive. *Id.* ¶ 136. Thus, the first two elements of § 1125(d)(1)(A) are met.

Regarding the third element, consideration of the § 1125(d)(1)(B)(i) factors supports a finding that Bouchouev had a bad faith intent to profit from the TWITCH mark when using the mark on his various websites. Here, the similarity between the domain names used by Bouchouev and Twitch shows that he intended to divert consumers from Twitch's website for his commercial gain. *See* 15 U.S.C. § 1125(d)(1)(B)(i)(V); *see also* Complaint ¶ 52; Ex. B to Complaint. Because Bouchouev profited through the websites at issue, his use of the TWITCH mark in the domain names is neither "bona fide commercial [nor] fair use" of the mark. 15 U.S.C. § 1125(d)(1)(B)(i)(IV); *see also* Ex. G to Simpkins Decl., ECF 70-1. Other bad faith factors also weigh against Bouchouev. For instance, the domain names in question do not consist of Bouchouev's legal name. *See* 15 U.S.C § 1125(d)(1)(B)(i)(II); *see also* Complaint ¶ 52; Ex. B to Complaint. Bouchouev also registered multiple domain names containing the distinctive TWITCH mark. 15 U.S.C. § 1125(d)(1)(B)(i)(VIII); *see also* Complaint ¶ 52; Ex. B to Complaint. Hence, the third element of § 1125(d)(1)(A) is met.

For the above reasons, the Court concludes that Twitch has sufficiently alleged that Bouchouev's use of www.twitch-viewerbot.com, www.twitch-buddy.com, and www.twitchviewerbot.net is in bad faith, and thus weighs in favor of entering default judgment on Twitch's claim for cybersquatting in violation of the ACPA, 15 U.S.C. § 1125(d).

### iv.    Breach of Contract (California Common Law)

"A claim for breach of contract is comprised of a contract, plaintiff's performance or excuse for nonperformance, defendant's breach, and the resulting damages to plaintiff." *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1099 (N.D. Cal. 2014) (citing *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.* 222 Cal. App. 3d 1371, 1388 (1990)).

Here, Twitch's Terms is a contract. *See, e.g.*, *Yelp Inc. v. Catron*, 70 F. Supp. 3d at 1099 (holding that a website's terms of service is a contract). The Complaint pleads that "Twitch has dutifully performed its obligations pursuant to the Terms." Complaint ¶ 63. There is no indication to the contrary, and Defendants have not appeared to dispute Twitch's nonperformance.

Renfrow/Kelly and Bouchouev agreed to the Terms "by registering an account with Twitch, using the Twitch services, and/or by accessing the Twitch services to, among other things, develop, test, or use their bots."  Complaint ¶ 42.  Indeed, Defendants needed to register accounts to offer "chat" and "follower" bots.  *See id.* ¶¶ 25–26, 42.  By agreeing to the Terms, Defendants consented to the prohibition on using any "robot . . . or other automated means to access the Twitch Service for any purpose."  *Id.* ¶ 37; Ex. A to Complaint at 9.  As Twitch points out in its motion, Defendants breached the Terms by accessing Twitch with automated bots to artificially inflate the number of viewers and followers.  Complaint ¶¶ 52–70, 114–21, 162.  Because of the breach, Defendants caused damage to Twitch's goodwill, and Twitch expended significant resources for combating the bots to preserve a fair playing field for broadcasters and the quality of its services.  *Id.* ¶ 7.

Accordingly, Twitch has shown that Defendants are liable for breaching Twitch's Terms. The merits and sufficiency of the allegations thus favor entering default judgment on Twitch's claim for breach of contract.

## B.    Sum of Money at Stake

Twitch seeks (1) Bouchouev's actual profits for infringing its registered and unregistered trademarks under 15 U.S.C. § 1117(a); (2) statutory damages from Renfrow/Kelly for infringing its registered and unregistered trademarks under 15 U.S.C. § 1117(c); and (3) statutory damages from Bouchouev for cybersquatting in violation of the ACPA, 15 U.S.C. § 1125(d).  Motion at 19–23.  Courts have held that a plaintiff may recover both actual and statutory damages for trademark infringement and statutory damages for cybersquatting.  *See, e.g.*, *Digby Adler Grp. LLC v. Image Rent a Car, Inc.*, 79 F. Supp. 3d 1095, 1109 n.5 (N.D. Cal. 2015); *Yelp, Inc. v. Catron*, 70 F. Supp. 3d 1082 (N.D. Cal. 2014); *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1085–86 (C.D. Cal. 2012) (citing *St. Luke's Cataract and Laser Inst., P.A. v. Sanderson*, 573 F.3d 1186, 1206 (11th Cir. 2009)) ("We agree and conclude that [an ACPA] statutory damages award, which serves as a sanction to deter wrongful conduct, is not duplicative of a service mark infringement actual damages award, which serves to compensate a plaintiff for his injuries.").  However, courts have the discretion to deny a plaintiff's request for actual damages.

*See Media Lab, Inc. v. Collis*, No. 08-CV-4732-HRL, 2010 WL 3893582, at *6 (N.D. Cal. Sept. 30, 2010) (exercising discretion to deny plaintiff's request for actual damages for trademark infringement because the plaintiff sought statutory damages for cybersquatting, and where the claims for trademark infringement and cybersquatting were based upon the same underlying conduct).

Here, Twitch seeks an award of (1) $100,077.51 in actual damages for Bouchouev's Lanham Act violations; (2) $10,000 in statutory damages for Renfrow/Kelly's Lanham Act violations; and (3) $45,000 in statutory damages for Bouchouev's ACPA violations. Motion at 19–23. Thus, there is a substantial amount of money at stake in this action. "When the money at stake in the litigation is substantial or unreasonable, default judgment is discouraged." *Bd. of Trs. v. Core Concrete Const., Inc.*, No. 11-CV-2532-LB, 2012 WL 380304, at *4 (N.D. Cal. Jan.17, 2012) (citing *Eitel*, 782 F.2d at 1472). However, when "the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate." *Id.* (citations omitted). Were the Court to award the requested damages, Defendants would be liable for over $150,000. This Court has considerable discretion, however, to tailor the damages as it "considers just." 15 U.S.C. § 1117(d). This factor is therefore neutral, neither weighing in favor nor against the entry of default judgment.

## C. The Remaining *Eitel* Factors

The remaining *Eitel* factors generally weigh in favor of entering default judgment. For example, Twitch will be prejudiced by the denial of default judgment because it would be denied the right to judicial resolution of its claims and would likely be without other recourse to recover for the harm inflicted by Defendants and to prevent future infringement of its trademarks and ongoing breach of the Terms. Motion at 18–19. There is unlikely to be a dispute concerning material facts in this action because Defendants have not answered. Moreover, the facts show that Defendants' default is not due to excusable neglect because Twitch has served the filings in this lawsuit on Defendants, and Defendants have actual knowledge of the progress of this action. *See, e.g.*, ECF 34; Motion at 18–19.

Based on the foregoing analysis, the Court finds that the factors in favor of granting default

judgment outweigh the strong federal policy favoring decisions on the merits. The Court accordingly GRANTS Twitch's Motion for Default Judgment as to both Defendants in regard to liability for (1) trademark infringement in violation of 15 U.S.C. § 1114, (2) unfair competition in violation of 15 U.S.C. § 1125(a), and (3) breach of contract under California common law. The Court also GRANTS Twitch's Motion for Default Judgment as to Bouchouev for cybersquatting in violation of the ACPA, 15 U.S.C. § 1125(d).

## IV.    REMEDIES

Twitch seeks an award from Bouchouev in the amount of Bouchouev's actual profits for trademark infringement and statutory damages for cybersquatting. Motion at 21–23. For Renfrow/Kelly, Twitch seeks statutory damages for trademark infringement. *Id.* at 19–21. Twitch also seeks a permanent injunction against Bouchouev and Renfrow/Kelly's future infringement of its trademarks and violation of Twitch's Terms. *Id.* at 23–24. Finally, Twitch seeks attorney's fees and costs pursuant to 15 U.S.C. § 1117(a). *Id.* at 24–25. In assessing remedies, the Court does not take the allegations in the Complaint as true and will examine the evidence offered by Twitch in support of each form of requested relief. *Bittorrent*, 2014 WL 5773197, at *11 (citing *Televideo*, 826 F.2d at 917–18).

### A.    Actual Profits from Bouchouev

As an initial matter, the Court observes that Federal Rule of Civil Procedure 54(c) provides that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). "The purpose of this rule is to ensure that a defendant is put on notice of the damages being sought against it so that he may make a calculated decision as to whether or not it is in his best interest to answer." *See Alameda County Elec. v. Banister Elec., Inc.*, 2012 WL 3042696, at *1 (N.D. Cal. July 25, 2012) (citing *In re Ferrell*, 539 F.3d 1186, 1192–93 (9th Cir. 2008); *Board of Trustees v. Total Air Balance Co.*, 2009 WL 1704677, at *3–5 (N.D. Cal. June 17, 2009)). The Ninth Circuit has held that Rule 54(c) does not limit default judgments to the specific dollar amount stated in the complaint when the prayer seeks damages to be proved at trial. *See* Henry v. Sneiders, 490 F.2d 315, 317 (9th Cir. 1974) (holding that entry of default judgment in excess of the $71,243.68 sought in the complaint was appropriate because the

complaint also sought additional damages "not yet fully determined"). Here, the Complaint put Bouchouev on notice that his trademark infringement would entitle Twitch to his "actual profits" resulting from his "use [of] the TWITCH mark in domain names and on [his] websites in connection with the provision of bot services." *See* Complaint ¶¶ 124, 128; *see also* 15 U.S.C. § 1117(a) (plaintiff is "entitled . . . to recover (1) defendant's profits . . . ."). Due to the nature of the requested damages, the Court concludes that Bouchouev is intimately aware of his own profits on this unlawful enterprise and thus on notice of the potential recovery for his wrongdoing.

Next, if the amount of damages is "capable of mathematical calculation" through evidence, a court may enter default judgment without a hearing on damages. *Mesa Underwriters Specialty Ins. v. Paradise Skate*, No. 15-CV-1253-YGR, 2016 WL 9045622, at *10 (N.D. Cal. Apr. 11, 2016) (internal quotation and citation omitted). Here, the Complaint alleges that "as a consequence of [Bouchouev's] willful infringement,"[7] Twitch is entitled to recover "three times the amount of actual profits" for its claims for trademark infringement under 15 U.S.C. § 1114, unfair competition under 15 U.S.C. § 1125(a), and cybersquatting under 15 U.S.C. § 1125(d). *See* Complaint ¶¶ 128, 136, 144. In its motion, Twitch requests only Bouchouev's profits in the amount of $100,077.51 based on information Twitch obtained through limited discovery. *See* Motion at 21–22. As evidence of Bouchouev's actual profits, Twitch submitted the declaration of Holly Simpkins and attached exhibits. *See* Simpkins Decl., ECF 70.

According to Twitch, Twitch learned that Bouchouev funnels profits from his illegal bot businesses through a FastSpring account in Bouchouev's name with the company ID "twitchviewerbot." *See* Exs. F, H to Simpkins Decl., ECF 70-1. The deposits into this account, which total $100,077.51, are associated with bot product sales such as "Bot Gold," "Bot Silver," and "Bot Platinum." Ex. G to Simpkins Decl. It appears that this account exists solely for Bouchouev to collect revenue from his infringing websites. Ex. H to Simpkins Decl. Based on this evidence, Twitch requests entitlement to the entire sum, $100,077.51. *See* Motion at 22. The Court finds that Twitch's request is an accurate assessment of Bouchouev's actual profits. The

---

[7] The Court finds that Defendants' infringement was willful. *See* Section IV.D *infra*.

Court accepts the accuracy of the exhibits submitted by Twitch since they are reports from FastSpring, an e-commerce payment provider, who supplied Bouchouev with an account. *See* Simpkins Decl. at 2. Moreover, the requested amount is reasonable in light of analogous case law. *See, e.g.*, *Sprint Nextel Corp. v. Thuc Ngo*, 2014 WL 869486, at *5 (N.D. Cal. Mar. 3, 2014) (awarding plaintiff $316,698.00 in "actual damages trebled" against a defaulting defendant in a trademark and unfair competition case). Accordingly, the Court GRANTS Twitch $100,077.51 in actual damages for Bouchouev's Lanham Act violations.

### B. Statutory Damages

#### i. Renfrow/Kelly's Lanham Act Violations

Under the Lanham Act, the Court can award statutory damages of "not less than $1,000 or more than $200,000 per counterfeit mark . . . . as the court considers just." 15 U.S.C. §1117(c)(1). The Court is satisfied that Renfrow/Kelly was on notice that statutory damages were being sought for his unlawful conduct, and he is deemed to know the statutory range of monetary recovery. Generally, the Court has wide discretion in determining the amount of statutory damages appropriate. *See Columbia Pictures Television, Inc. v. Krypton Broad. Of Birmingham, Inc.*, 259 F.3d 1186, 1194 (9th Cir. 2001). Here, Twitch requests $10,000 for Renfrow/Kelly's infringement of Twitch's trademarks. Motion at 21. The Court finds the requested amount to be reasonable and proportionate to the purported violations given the damages awarded by California courts for trademark infringement. *See Deckers Outdoor Corp. v. Verre*, No. 09-CV-0670-SJO, 2010 WL 11597305, at *7 (C.D. Cal. May 27, 2010) (awarding non-willful trademark infringement damages of $20,000 per mark); *see also Leadership Studies, Inc. v. ReadyToManage, Inc.*, No. 09-CV-9459-CAS, 2017 WL 2408118, at *4 (C.D. Cal. June 2, 2017) (awarding $100,000 per infringed mark in a default judgment). Accordingly, the Court hereby GRANTS Twitch's request for $10,000 in statutory damages against Renfrow/Kelly.

#### ii. Bouchouev's Cybersquatting Violations

The ACPA permits a plaintiff to recover statutory damages pursuant to 15 U.S.C. § 1125(d)(1). Section 1117(d) provides that "[i]n a case involving a violation of section 1125(d)(1)," the plaintiff may elect statutory damages instead of actual damages and profits and

seek "an award of statutory damages in the amount of not less than $1,000 and not more than $100,000 per domain name, as the court considers just." 15 U.S.C. § 1117(d). Hence, Twitch seeks statutory damages for its cybersquatting claim under the ACPA. Motion at 22–23. The Complaint's prayer for relief section pleads statutory damages permitted by law. *See* Complaint at Prayer for Relief. Thus, Bouchouev has been put on notice that he may be subject to a statutory penalty per infringing domain name.

In determining a just award, courts have considered the bad faith criteria identified in the ACPA, 15 U.S.C. § 1125(d)(1)(B)(i). *See, e.g.*, *Bittorrent*, 2014 WL 5773197, at *11; *Facebook, Inc. v. Banana Ads LLC*, No. 11-CV-3619-YGR, 2013 WL 1873289, at *15–16 (N.D. Cal. Apr. 30, 2013). Here, Twitch urges the Court to adopt the analysis in *Banana Ads*. Motion at 22–23. In *Banana Ads*, the court weighed the following factors to evaluate a defendant's bad faith: "the number of domain names registered, whether there was an attempt to conceal the registrant's identity, whether the correct spelling of Plaintiff's trademark is contained in the infringing domain names, whether an individual defendant is a serial cybersquatter, and whether internet traffic was redirected" to a landing website. *Banana Ads*, 2013 WL 1873289, at *15 (citing 15 U.S.C. § 1125(d)(1)(B)(i)). The Court agrees that the factors identified in *Banana Ads* provide a helpful framework. *See Bittorrent*, 2014 WL 5773197, at *11–12 (considering the factors and damage amounts suggested in *Banana Ads*).

The Court determines that a base award of $5,000 per domain name is appropriate. *Banana Ads*, 2013 WL 1873289, at *16 (assessing a base statutory damages award of $5,000 per domain for defendants who registered between one and nine infringing domains). It is proper to award more than the minimum award of $1,000, given that Bouchouev registered not just one but three infringing domain names. Complaint ¶ 52; Ex. B to Complaint. "The more infringing domain names a defendant registered or acquired, the more malicious the conduct" and a higher damage award is warranted. *Banana Ads*, 2013 WL 1873289, at *16 (citing 15 U.S.C. § 1125(d)(1)(B)(i)(VIII)).

The Court next evaluates whether other bad faith factors warrant an increase of the base award. Registering a domain name by incorporating the correctly-spelled infringing mark with

other correctly-spelled common words is evidence of malicious conduct. *Banana Ads*, 2013 WL 1873289, *16 (adding $10,000 in statutory damages per domain name where infringing domain names combined the correctly-spelled word FACEBOOK with other proper words). Here, Bouchouev's three infringing domain names—www.twitch-viewerbot.com, www.twitch-buddy.com, and www.twitchviewerbot.net —all fall under this category. Complaint ¶ 14. Thus, the Court increases the base statutory award of $5,000 by $10,000 per domain name.

Based on the foregoing analysis, the Court concludes that Twitch should be awarded $45,000 in statutory damages for Bouchouev's cybersquatting, which is broken down into $15,000 per domain name. Accordingly, the Court GRANTS Twitch's request for ACPA statutory damages against Bouchouev.

### C. Injunctive Relief Against Defendants

Twitch requests a permanent injunction to prevent Defendants from engaging in future infringement of Twitch's trademarks or violation of its Terms. Motion at 23. Injunctive relief is authorized under 15 U.S.C. § 1116(a) to prevent trademark infringement, unfair competition, and cybersquatting violations as claimed in the present case. "Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by defendant's continuing infringement." *Century 21*, 846 F.2d at 1180. However, courts considering permanent injunctive relief under 15 U.S.C. § 1116(a) must still apply traditional equity principles and inquire whether a plaintiff has demonstrated: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006); *see also Herb Reed Enterprises, LLC v. Florida Entm't Mgmt., Inc.*, 736 F.3d 1239, 1249 (9th Cir. 2013) ("actual irreparable harm must be demonstrated to obtain a permanent injunction in a trademark infringement action").

A plaintiff may also be entitled to injunctive relief for a breach of contract claim under California law. *DVD Copy Control Ass'n, Inc. v. Kaleidescape, Inc.*, 176 Cal. App. 4th 697, 721–

23 (2009). "If state law allows a party to seek injunctive relief, the federal standard then governs a court's exercise of discretion in determining whether to grant an injunction." *Clear-View Techs., Inc. v. Rasnick*, No. 13-CV-2744-BLF, 2015 WL 13298075, at \*12 (N.D. Cal. Aug. 31, 2015). As California law allows a party to seek injunctive relief, the Court will apply the federal standard in determining whether to issue a permanent injunction. *Id.*

Here, Twitch has established irreparable injury in the form of damage to its reputation and goodwill from Bouchouev and Renfrow/Kelly's persistent trademark infringement and Bouchouev's cybersquatting. *See* Exs. B, E to Simpkins Decl.; Complaint ¶¶ 52, 56, 67, 114, 116, 120; Exs. B, B-III, G, G-II to Complaint. Defendants' use of Twitch's trademarks to advertise and sell bot services would degrade the quality of content offered by Twitch. Hall Decl. ¶¶ 7–12, ECF 69. Monetary damages would be an inadequate remedy to cure Twitch's loss in goodwill. *See, e.g.*, *Card Tech Int'l, LLLP v. Provenzano*, No. CV 11-2434-DSF, 2012 WL 2135357, at \*25 (C.D. Cal. June 7, 2012). The balance of hardships and the public interest also weigh in favor of equitable relief. Defendants are in default and have not demonstrated that they would incur any hardship from being permanently enjoined against infringing Twitch's trademarks or violating the Terms. Moreover, the public is not disserved by a permanent injunction, particularly because the public may have been deceived and harmed by Defendants' trademark infringement and offering of automated bots. As such, equity favors the entry of a permanent injunction against Defendants.

Generally, the scope of a permanent injunction "must be narrowly tailored to remedy only the specific harms shown by the plaintiff[] rather than to enjoin all possible breaches of the law." *Iconix, Inc. v. Tokuda*, 457 F. Supp. 2d 969, 998–1002 (N.D. Cal. 2006) (citing *Price v. City of Stockton*, 390 F.3d 1105, 1117 (9th Cir. 2004)). Furthermore, Federal Rule of Civil Procedure 65(d) requires that a permanent injunction "state its terms specifically" and describe "in reasonable detail . . . the act or acts restrained or required." Fed. R. Civ. P. 65(d). Along with its motion, Twitch submitted a separate proposed injunction order. Proposed Injunction, ECF 68-2. The Court is satisfied that Twitch's requested injunctive relief is generally narrowly tailored to cover Defendants' infringement of Twitch's trademarks and violation of the Terms by selling automated bot package targeting Twitch's services.

1   Accordingly, the Court GRANTS Twitch's request for permanent injunctive relief against

2   Defendants' future infringing uses of Twitch's trademarks and violations of the Terms, as set forth

3   in Section V *infra*.

4   **D.    Attorney's Fees and Costs**

5   Twitch seeks costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1117(a), which

6   provides that the Court shall award "the costs of the action" where the defendant has violated

7   15 U.S.C. §§ 1125(a) or (d) and "may award reasonable attorney fees" in exceptional cases.  *See*

8   15 U.S.C. § 1117(a); Motion at 24–25.  Attorney's fees are available under § 1117(a) even when a

9   plaintiff seeks statutory damages under § 1117(d), provided the case is exceptional.  *Bittorrent*,

10  2014 WL 5773197, at *14.

11  "A trademark case is exceptional where the district court finds that the defendant acted

12  maliciously, fraudulently, deliberately, or willfully."  *Watec Co. v. Liu*, 403 F.3d 645, 656 (9th

13  Cir. 2005).  Here, Bouchouev and Renfrow/Kelly's trademark infringement of Twitch's

14  trademarks and Bouchouev's cybersquatting is clearly willful.  Also, this Court has found that

15  Bouchouev registered confusingly similar domain names in bad faith.  Although bad faith does not

16  necessarily mandate a declaration of exceptionality, here it reinforces the Court's conclusion that

17  the facts indicate both Defendants engaged in a scheme of deliberate, intentional, and willful

18  trademark infringement aimed at causing customer confusion.  *See Earthquake Sound Corp. v.*

19  *Bumper Indus.*, 352 F.3d 1210, 1216–17 (9th Cir. 2003) (collecting cases).

20  Accordingly, the Court finds that this is an exceptional case within the meaning of

21  15 U.S.C. § 1117(a) and GRANTS Twitch's request for costs and reasonable attorney's fees,

22  subject to proof.

23  **V.    ORDER**

24  For the foregoing reasons, IT IS HEREBY ORDERED that Twitch's Motion for Default

25  Judgment is GRANTED as to both Defendants in regard to liability for (1) trademark infringement

26  in violation of 15 U.S.C. § 1114, (2) unfair competition in violation of 15 U.S.C. § 1125(a), and

27  (3) breach of contract under California common law.  Twitch's motion is likewise GRANTED as

28  to Bouchouev's liability for cybersquatting in violation of the ACPA, 15 U.S.C. § 1125(d).  In

addition, Twitch's request that Jared Kelly be added to the caption as a Defendant is GRANTED. All allegations against "Renfrow" are deemed to be allegations against Kelly.

As to remedies, Twitch's Motion for Default Judgment is GRANTED, and Twitch is awarded $100,077.51 in actual profits and $45,000 in statutory damages against Bouchouev. In addition, Twitch is awarded $10,000 in statutory damages against Renfrow/Kelly. Finally, Twitch is awarded costs and reasonable attorney's fees, subject to proof, against both Renfrow/Kelly and Bouchouev.

IT IS FURTHER ORDERED THAT a separate injunction order shall issue on the following terms:

1. Jared Kelly AKA Alex Renfrow and Eric Bouchouev shall not directly or indirectly provide any product or service related to software programs that interact with any services offered by Twitch including but not limited to the website available at www.twitch.tv, and its network of websites, software applications, and related products or services (collectively, "Twitch Services").

2. Jared Kelly AKA Alex Renfrow and Eric Bouchouev shall not use or access the Twitch Services.

3. Jared Kelly AKA Alex Renfrow and Eric Bouchouev shall not use any simulation, reproduction, counterfeit, copy, or colorable imitation of Twitch's registered or unregistered trademarks including the TWITCH trademark (U.S. Registration No. 4,275,948 and U.S. App. Serial No. 86,485,231), the TWITCHTV trademark (U.S. Registration Nos. 4,087,877 and 4,230,874), and the Glitch Logo (U.S. App. Serial No. 86,485,295).

4. Jared Kelly AKA Alex Renfrow and Eric Bouchouev shall not use any false description which can or is likely to lead the trade or public or individuals erroneously to believe that any software, service, program, item, or thing has been promoted, displayed, licensed, sponsored, approved, or authorized by or for Twitch.

5. Jared Kelly AKA Alex Renfrow and Eric Bouchouev shall not create, write, develop or assist in the creation, writing or development of any robot, crawler, spider, software, program, device or the like that interacts in any way with the Twitch Services.

6. Jared Kelly AKA Alex Renfrow and Eric Bouchouev shall not use, offer, advertise,

sell, or provide, or assist in the use, offer, advertising, sale or provision of any robot, crawler, spider, software, program, device or the like that interacts with the Twitch Services.

7.     Eric Bouchouev shall transfer the domain names www.twitch-viewerbot.com, www.twitch-buddy.com, and www.twitchviewerbot.net to Twitch.  Bouchouev shall not attempt to re-register these domain names or register any other domain names that include the word "twitch" or any confusingly similar word(s).  If Bouchouev does not transfer these domain names to Twitch within thirty (30) days of service of this order, Twitch may take appropriate action to enforce this injunctive relief.

8.     This Order shall be binding upon and inure to the benefit of the parties and all successors, assigns, parent entities, subsidiaries, officers, directors, members, shareholders, distributors, agents, affiliates, and all other persons who are in active concert or participation with anyone described herein.

9.     The Court shall retain jurisdiction for the purposes of construing, modifying, and enforcing this Permanent Injunction.

10.    Notice of this Order shall be served upon Eric Bouchouev by emailing copies to noxalis@hotmail.com and twitchviewerbot@gmx.ch, and upon Jared Kelly AKA Alex Renfrow by emailing copies to sexygurl1505@gmail.com, blastgram@gmail.com, and sales@famehomies.com.

11.    Plaintiff shall file its motion for attorney's fees within **21 days of this order**.


       **IT IS SO ORDERED.**

Dated: July 26, 2019

_____
BETH LABSON FREEMAN
United States District Judge